**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

**UNITED STATES OF AMERICA**

v.  Case No. 3:06cr83/MCR

**JO D. HOVIND**

_____

**UNITED STATES' SECOND SENTENCING MEMORANDUM**

The United States of America, by and through the undersigned Assistant United States Attorney, hereby submits this Second Sentencing Memorandum for the Court's consideration in the defendant's sentencing hearing currently scheduled for Friday, June 29, 2007. Specifically, the United States submits that this Court should consider imposing a sentence above the advisory Guidelines range of 0-6 months. As seen below, the facts and law pertaining to this case justify either a "variance" pursuant to 18 U.S.C. § 3553(a) factors, or an upward departure from the Guidelines.

**A.   Procedural Background**

Jo D. Hovind ("the defendant"), along with her husband Kent E. Hovind, was indicted in the Northern District of Florida on July 11, 2006. *(Doc. #2)*. The fifty-eight count Indictment included tax counts, with which only Kent Hovind was charged, and structuring of monetary transactions counts (Counts Thirteen through Fifty-Seven), with which both defendants were charged. *(Id.)*. On November 2, 2006, both defendants were

convicted on all counts of the indictment. *(Doc. #90)*.

The sentencing was originally set for January 19, 2007. *(Doc. #93)*. A Presentence Report (PSR) was created as to the defendant and disclosed to the parties on December 15, 2006. That report utilized the 2006 Edition of the Guidelines Manual *(PSR, ¶ 32)*, and calculated an advisory guidelines range of 51-63 months imprisonment, *(PSR, ¶ 69)*, based upon a base offense level of 22. In the Addendum dated January 12, 2007, the appropriate Guidelines Manual was changed to the 2001 version. The calculation was reduced in the addendum to 41-51 months, but the base offense level of 22 remained unchanged. *(PSR Addendum, ¶¶ 34, 69)*.

At the sentencing hearing, the Court questioned whether, in the 2001 manual, § 2S1.3(b)(2) should apply. The Court requested briefing from the parties and reset the sentencing hearing. *(Doc. #148)*. Thereafter, the United States withdrew any objection to the application of § 2S1.3(b)(2), and a revised PSR was created. This amendment changed the advisory Guidelines range significantly. According to the February 27, 2007, Revised PSR, the guidelines range the defendant now faces is 0-6 months, based upon a base offense level of 6, Criminal History Category I. *(Revised PSR and Addendum, ¶¶ 35, 69)*.

B.   **Relevant Factual Summary**

At trial, the United States proved that, from approximately July 1999 through August 2002, the defendant knowingly, and for the purpose of evading the reporting requirements of Title 31, United States Code, Section 5313(a), structured transactions at

2

AmSouth Bank.  (*See PSR, ¶ 19 et seq; Testimony of SA Frederick Charles Evans; Testimony of Anne Dyson, Regional Operations Manager of AmSouth Bank; Gov't. Exhs. STR 1-214 (Checks); 217 (Summary Charts); INC 1-38 (AmSouth Bank Statements); STR 152-155 & 215-216 (CTRs).*

Specifically, the United States proved that, in order to meet the payroll obligations of CSE, the defendant withdrew slightly under $10,000 cash from her account in irregular intervals and several times per month, on occasion several times per week. *(Id.).*  At the time of each individual withdrawal, the defendant had financial need greater than the amount withdrawn, and had more money available than the amount withdrawn, but chose to withdraw under $10,000 on every occasion.  *(Bank Records, Id.; INC 193 (2003 Deposit Summary); INC 248 January 2001-December 2003 Bank Balances; INC 195 (Total Deposits and Telephone for CSE 1996-2001); INC 193 (2003 Worker Expenses); PR 11 (Employee List; PR 58 (Chart of Employment Tax Computations' PR 32-36 (various Payroll Charts covering 1999-2003).*

Through testimony of former employee Brian Popp (to whom Kent Hovind stated in 1998 that CTRs were "a bad thing"), AmSouth Bank operations manager Anne Dyson (who testified about the 2:00 pm business day cut-off posted at the bank), former neighbor Darlene Porter (from whom the Hovinds bought property by way of structured cashier's checks), the bank records and CSE records, and the sheer volume of the transactions, the United States established at trial that the defendants had knowledge of the reporting requirements and structured each transaction to evade the filing of a CTR

3

for over four years.

### C. Post-*Booker* Sentencing

After *United States v. Booker,* 543 U.S. 220, 125 S.Ct. 738 (2005), in order to impose a lawful sentence this court must correctly calculate the defendant's appropriate advisory Guidelines range. *United States v. Williams,* 435 F.3d 1350, 1353 (11th Cir. 2006)(*per curiam*); *United States v. Talley,* 431 F.3d 784, 786 (11th Cir. 2005)(*per curiam*); *United States v. Crawford,* 407 F.3d 1174, 1178 (11th Cir. 2005). After the court makes this calculation, it "may impose a more severe or more lenient sentence as long as the sentence is reasonable." *Id.* That is, the court is to properly calculate the defendant's Guidelines range, but after doing so it must consider the factors set forth in 18 U.S.C. § 3553(a) and may tailor the defendant's sentence in light of those factors. *Booker,* 125 S.Ct. at 757, 764, 766-67; *Williams,* 435 F.3d at 1353; *Talley,* 431 F.3d at 786. The *Talley* Court summarized the § 3553(a) factors as follows:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for deterrence; (4) the need to protect the public; (5) the need to provide the defendant with needed educational or vocational training and medical care; (6) the kinds of sentences available; (7) the Sentencing Guidelines range; (8) pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwarranted sentencing disparities; and (10) the need to provide restitution to victims.

*Talley,* 431 F.3d at 786.[1]

---

[1] Factors (2) through (5) are set forth at § 3553(a)(2), and those factors mirror the reasons traditionally recognized for imposing sentence: (a) retribution, (b) deterrence, sometimes

4

After such consideration, the court may find the advisory Guidelines range inadequate because it fails to represent the seriousness or full breadth and nature of the crime committed, or where it under-represents the harm. *18 U.S.C. § 3553(a)(2)(A); see also United States v. Amedeo,* 2007 WL 1500184, *7-8 (11th Cir. 2007); *United States v. Valnor*, 451 F.3d 744, 748-49 (11th Cir. 2006); *United States v. Eldick,* 443 F.3d 783, 789-90 (11th Cir. 2006).

The court may also deviate upwards from the guidelines calculations pursuant to factors in the Guidelines Manual, pursuant to traditional principles enumerated in Chapter 5 of the Guidelines Manual. *See, e.g., United States v. Wallace,* 461 F.3d 15 (1st Cir. 2006); *United States v. Valle,* 929 F.2d 629 (11th Cir.1991).

### 1. The Guidelines Recalculation

The Probation Office, in its original guidelines calculations using the 2001 Guidelines Manual (first utilized in the Addendum), found the defendant's base offense level to be 22. However, after researching the issue further, the Probation Office recalculated using Section 2S1.3(b), which states:

> **(1)** **If the defendant knew or believed that the funds were proceeds of unlawful activity, or were intended to promote unlawful activity, increase by 2 levels.**

---

referred to as general deterrence, i.e., the need to deter others from committing like crimes, (c) incapacitation, sometimes referred to as specific deterrence, i.e., the need to prevent the defendant from committing crime, and (d) rehabilitation. *Bullington v. Missouri*, 451 U.S. 430, 443 n. 16, 101 S.Ct. 1852, 1860 n. 16 (1981); *United States v. Godfrey*, 22 F.3d 1048, 1058 (11th Cir. 1994). The Sentencing Reform Act of 1984 reflects that the least important of the four goals is rehabilitation. *Mistretta v. United States,* 488 U.S. 361, 365, 109 S.Ct. 647, 651 (1989); *United States v. Scroggins*, 880 F.3d 1204, 1207 (11th Cir. 1989).

> **(2)    If (A) subsection (b)(1) does not apply; (B) the defendant did not act with reckless disregard of the source of the funds; (C) the funds were the proceeds of lawful activity; and (D) the funds were to be used for a lawful purpose, decrease the offense level to level 6.**

The Probation Office applied § 2S1.3(b)(2), and decreased the defendant's offense level to 6. *(February 27, 2007 Revised Presentence Report and Addendum, ¶ 35)*. The United States did not object to this calculation; however, consideration of this provision's application to this case, and the concomitant reduction in the guidelines range, should not stop there.

### 2. The Guidelines Range Underrepresents the Seriousness of the Crimes Committed

Factually, application of this provision is arguable. An issue exists as to whether § 2S1.3(b)(2)(D) constitutes a true statement in regard to this case. The defendant withdrew cash funds for the specific unlawful purpose of paying CSE employees "under the table," outside the reach of the IRS, and without withholding taxes from the pay. Therefore, though the "lawful" purpose utilized in the application of this Guidelines provision was to pay employees, the act of payment was done in violation of law.[2]

The question of § 2S1.3(b)(2)(D)'s application to this case is a close one and without precedent under these unusual facts. Therefore, the United States, having the burden to justify the calculations, did not challenge the application of § 2S1.3(b)(2).

---

[2]One could make the argument that, not only does § 2S1.3(b)(2) not apply, § 2S1.3(b)(1) *does* apply. The defendant "intended to promote unlawful activity" in that she withdrew the funds specifically to assist in evading employment taxes. But for that motivation, cash would not have been withdrawn.

However, the true purpose of the cash transactions conducted by the defendant, is a factor for the Court to consider in weighing sentencing options, including a variance or an upward departure.

### a. Guidelines Departure

Section 5K2.9 allows for departures from the Guidelines range where "the defendant committed the offense in order to facilitate or conceal the commission of another offense..." *U.S.S.G. § 5K2.9.* Departure from the range mandated by the Sentencing Guidelines is warranted based upon a finding by the court "that there exists an aggravating ... circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." *18 U.S.C. § 3553(b); United States v. Valle,* 929 F.2d 629 (11th Cir.1991) (per curiam). The three-step analysis set forth in *Valle* begins with the question of whether the Guidelines adequately consider a particular factor so as to preclude the court from relying on it as a basis for departure. Second, the court determines whether there exists sufficient factual support for the departure. *18 U.S.C. § 3742(e).* The final step is to determine whether the extent of the departure was reasonable (§ 3742(e)(3)) "giv[ing] due regard to the opportunity of the district court to judge the credibility of the witnesses ... and giv[ing] due deference to the district court's application of the guidelines to the facts." 18 U.S.C. § 3742(e); *Valle,* 929 F.2d 629.

As shown at trial, the crimes of conviction were carried out for the sole purpose of facilitating the tax evasion crimes committed by husband and co-defendant Kent

Hovind.[3]  The Guidelines are based solely upon the defendant's structuring acts, and do not take into consideration her participation in the tax schemes with which Kent Hovind was charged.  Tax charges would have resulted in a Guidelines range higher than 0-6 months, and no adjustments for these crimes were applied to the defendant.  Therefore, this is a factor not adequately taken into account in the 2001 version of the Sentencing Guidelines, and it is a valid reason for an upward departure.

### b.  Section 3553(a) Variance

The court may also fashion a sentence above the advisory Guidelines range based upon § 3553(a) factors, and in particular, subsections (a)(2)(A) and (B): "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; [and] (B) to afford adequate deterrence to criminal conduct."  *18 U.S.C. § 3553(a)(2)(A)&(B).*

Significant in consideration of these provisions is the history of the applicable Guidelines section, § 2S1.3.  The key subsections cited above from the November 2001 Guidelines Manual, used to calculated the defendant's 0-6 month range, was amended in 2002.  Those amendments remain in place through the most recent 2006 Manual.  The

---

[3]Though the defendant was not charged with either conspiracy to commit tax crimes or with aiding and abetting such crimes, the evidence at trial would have supported such charges. Certainly, through the testimony of witnesses such as Brian Popp, Diane Cooksey, Darlene Porter, Thomas Pope, and David Gibbs, the documentary evidence showing the defendant's involvement in the financial and business aspects of CSE, the constant contact with the IRS, the production of anti-tax videos on the premises, the defendant's failure to file tax returns on her own behalf of on behalf of the businesses, and the outspoken beliefs of her husband relating to taxes, the Government proved her knowledge of the purpose of the cash withdrawals.

new version of Section 2S1.3(b) now reads as follows:

> **(b)(2)  If the defendant (A) was convicted of an offense under subchapter II of chapter 53 of title 31, United States Code; and (B) committed the offense as part of a pattern of unlawful activity involving more than $100,000 in a 12-month period, increase by 2 levels.**
>
> **(3)  If (A) subsection (a)(2) applies and subsections (b)(1) and (b)(2) do not apply; (B) the defendant did not act with reckless disregard of the source of the funds; (C) the funds were the proceeds of lawful activity; and (D) the funds were to be used for a lawful purpose, decrease the offense level to level 6.**

*U.S.S.G. § 2S1.3(b)(2)-(3).*

As seen in the comparison, the Guidelines were changed to reflect an acknowledgment of the increased seriousness of structuring crimes in cases in which more than $100,000 was laundered.[4]  Here, that amount, around $1.5 million from 1999 through August 2002, far exceeds the mark set for a 2-level enhancement under subsection (b)(2).  That Guidelines provision took effect in November 2002, just three months after the defendant's last act of structuring in August 2002.  That three-month period resulted in an 18-level benefit for the defendant – from an offense level 24 to an offense level 6 – not on the basis of any conduct or substantive factor, but solely on the basis of which Guidelines manual was used.  This type of windfall based upon serendipitous offense timing should not play so large a role in fashioning a just sentence, and justifies a sentence above the Guidelines range.

In addition, the United States avers that a Guidelines sentence would not be

---

[4] Amendment 637, Supplement to Appendix C (Nov. 1, 2002) states the purpose of the enhancement was to give effect to the enhanced penalty provisions under 31 U.S.C. § 5322(b).

sufficient to promote respect for the law or afford deterrence from criminal conduct. This high-profile tax case featured flagrant and vocal violation of tax laws. Certainly, the vast majority of such behavior emanated from Kent Hovind, and the Court has heard some evidence that Jo Hovind attempted to discourage the anti-tax behavior. However, the defendant was a willing, active and essential participant in the scheme. To sentence her in the Guidelines range would provide little deterrent to anyone considering aiding illegal anti-tax activity such as that which was undoubtedly furthered by the defendant's conduct.

In any given case, including the present one, a very wide range of reasonable sentences exist from which the district court may choose. *Amedeo*, 2007 WL 1500184 at *7; *Talley*, 431 F.3d at 786. The Government does not dispute that the court would act reasonably and within its broad discretion if it imposed a guidelines sentence in this case. Similarly, given the facts present here, the Government submits it is beyond dispute that the court would act reasonably and within its broad discretion if it imposed a significantly above-guidelines sentence in this case. For all of the above reasons, the Government's position is that an above-guidelines sentence is appropriate, and the United States

respectfully requests that the Court consider all of above in fashioning an appropriate sentence.

Respectfully submitted this 22nd day of June, 2007.

>GREGORY R. MILLER
>United States Attorney
>
>*/S/ Michelle M. Heldmyer*
>MICHELLE M. HELDMYER
>Assistant United States Attorney
>Florida Bar No. 616214
>Northern District of Florida
>21 East Garden Street, Suite 400
>Pensacola, Florida 32502-5675
>(850) 444-4000

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the fore-going has been delivered via the CM-ECF filing and/or by U.S. mail to: Jerold W. Barringer, counsel for Jo D. Hovind, and Alan Stuart Richey, counsel for Kent E. Hovind, on this 22nd day of June, 2007.

>*/S/ Michelle M. Heldmyer*
>MICHELLE M. HELDMYER
>Assistant U.S. Attorney

11