**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

**v.**　　　　　　　　　　　　　　　　　　　　　　　**Case No.: 3:06cr83/MCR**

**KENT E. HOVIND and
JO D. HOVIND,**

    **Defendants.**
_____/

**ORDER**

On June 28, 2007, the court entered an Order Forfeiting Substitute Property of Defendants Kent and Jo Hovind ("the Hovinds") following a $430,400 money judgment entered by a special jury verdict on November 2, 2006.[1] Third-party claimants, Eric Hovind and Glenn Stoll, filed separate objections to the forfeiture order and petitioned for a hearing pursuant to 21 U.S.C. § 853(n)(2). Before the court now is the United States of America's ("the Government") Motion for Summary Judgment (doc. 286) seeking the forfeiture of substitute assets to satisfy the $430,400 judgment against the Hovinds. Glenn Stoll and

---

[1]The June 28, 2007, order included one bank account and ten real properties located in Pensacola, Florida. On October 8, 2008, the court entered a second Order Forfeiting Substitute Property adding a second bank account. The twelve substitute properties at issue here include:

(1) Wachovia Bank account number 20000-2577-8577;
(2) Regions Bank account number 5107101872;
(3) 5720 North Palafox Highway;
(4) 5800 North Old Palafox Street;
(5) 21 Cummings Road;
(6) 23 Cummings Road;
(7) 29 Cummings Road;
(8) 100 Cummings Road;
(9) 116 Cummings Road;
(10) 400 Cummings Road;
(11) 12 Oleander Drive; and
(12) 120 Oleander Drive.

Eric Hovind filed a combined response (doc. 315). After carefully considering the Government's motion and the claimants' response, the court finds the Motion for Summary Judgment should be granted in part and denied in part.

**BACKGROUND**

Kent Hovind and his wife, Jo Hovind, were the owners of Creation Science Evangelism ("CSE"), a nondenominational religious organization advocating the message of creation science and opposing the theory of evolution. Located in Pensacola, Florida, CSE sold videos and books, hosted debates, and provided lectures across the United States. Kent Hovind established CSE in 1989 and merged it ten years later with the Faith Baptist Fellowship, an independent Baptist church in Hawthorne, Florida. In 2002, Hovind wanted to create an independent structure for CSE, and to that end he sought the services of Glenn Stoll, director of a corporation known as Remedies at Law and, according to the company's literature, its general counsel.[2] Stoll and Remedies at Law promoted the formation of religious-based business organizations through pre-packaged plans that established "personal ministries." Stoll claimed such ministries could be created by completing a one-page Declaration of Status asking the declarant to answer several questions about his or her purpose, loyalties, and function in life. According to Stoll, answering these questions was a faith-based political statement that gave rise to "a lawfully established unincorporated association of pure trust." Government's Ex. CC at attachment 25. This generalized trust, in turn, was said to create a "ministerial trust" once it was reduced to written form. Stoll claimed his ministerial trusts provided a way to manage a ministry's assets, including the ability to hold and manage assets on a tax-free basis. The latter arrangement required associating each ministerial trust with a corporation sole created

---

[2]The record shows Stoll is not licensed to practice law by any state. Remedies at Law was incorporated under Oklahoma law in 1994 and has its principal place of business in Edmonds, Washington.

under Washington law.[3]  *See* Wash. Rev. Code § 24.12.010.  Stoll had already established several corporations sole at the time Kent Hovind hired him to restructure CSE, including entities under the names of the Director of Ecclesiastical Enterprises and the Firm Foundation.  Remedies at Law stated these corporations sole were entitled to "mandatory exceptions from federal, state or local taxation or secular license by their very nature." Government's Ex. CC at attachment 27.  By appointing a corporation sole as trustee of the ministerial trust, Stoll promised the trust could claim the same tax-exempt status as the corporation sole.[4]

Kent Hovind took advantage of Stoll's services by creating his own personal ministry through a Declaration of Purpose on May 12, 2003.  A formal written trust agreement was executed on May 21, 2003, creating a trust named Creation Science Evangelism Ministry ("CSE Ministry") with the corporation sole, Director of Ecclesiastical Enterprises, as trustee.

---

[3] "A corporation sole is composed of a series of natural persons who, one after another, hold the office of the religious leader of the particular religious organization."  *In re Catholic Bishop of Spokane*, 329 B.R. 304, 325-26 (Bankr. E.D. Wash. 2005), *rev'd*, *in part*, *on other grounds*, 364 B.R. 81 (E.D. Wash. 2006).  Washington law allows the bishop or overseer of a church in that state to himself or herself become a corporation sole, with each official successor also becoming a corporate body. Wash. Rev. Code § 24.12.010. The Washington statute, which gives corporations sole the right to establish trusts, was created so that religious organizations could hold property in perpetuity.  *In re Catholic Bishop*, 329 B.R. at 327.  Corporations sole may be the trustee or beneficiary of a trust.  *See* George Bogert, Bogert's Trusts and Trustees § 37 (2d ed. 1985).

[4] Stoll has since been permanently enjoined from using his corporations sole, including the Director of Ecclesiastical Enterprises and the Firm Foundation, in the manner described above.  These alleged corporations sole have been found to have no religious or ecclesiastical purpose.  *See United States v. Stoll*, No. C05-0262RSM, 2005 WL 1763617, at *2 (W.D. Wash. June 27, 2005).  The Washington district court found Stoll's use of corporations sole and ministerial trusts, which was virtually identical to CSE's restructuring, constituted a fraudulent tax scheme.  *Id.*  This court takes judicial notice only of the Washington court's order and does not rely on its findings of fact in deciding the instant case.  *See United States v. Jones*, 29 F.3d 1549, 1553-54 (11th Cir. 1994) (holding that a federal court may not consider findings of fact by another court in a summary judgment setting).  Although the Government appears to invite the court to use this injunction, together with a decision by the United States Tax Court, to decide its motion, the Government has not made clear why these courts' decisions are relevant.  The validity and tax status of Stoll's trusts are not at issue here.  The Government has also submitted a detailed affidavit from former Internal Revenue Agent Nicoli Ferrell explaining the alleged sham nature of Stoll's trusts and their ineligibility for tax-free status.  However, the Government has failed to submit the trust documents themselves except one for CSE Ministry.  CSE Ministry holds title to the Regions Bank account, whose forfeiture neither Stoll nor Eric Hovind disputes.

Stoll issued it a business license from the "Kingdom of Heaven."[5] Stoll and Hovind also created a second ministerial trust the same day, named it the Creation Science Evangelism Foundation ("CSE Foundation"), and also issued it a Kingdom of Heaven license. As the conveyance deeds noted below show, Stoll's corporation sole, the Firm Foundation, acted as trustee for the CSE Foundation. With these entities in place, the Hovinds began a complex process of transferring nine of the ten real properties at issue in this forfeiture proceeding to various ministerial trusts.[6] Five were conveyed to trusts specifically created for each of the properties. These included properties located at 5720 North Palafox Highway, 5800 North Old Palafox Street , 21 Cummings Road, 29 Cummings Road, and 400 Cummings Road ("the five individual trust properties").[7] Four were conveyed to the

---

[5] The Kingdom of Heaven is an organization associated with The Embassy of Heaven in Stayton, Oregon. Calling itself "God's Government on Earth," the Embassy of Heaven issues passports, driver and business licenses, and other identification cards to people who have "separated" from state government and pay a fee. *See* www.embassyofheaven.org.; *see also Stoll*, 2005 WL 1763617, at *1.

[6] The Wachovia Bank account was opened on June 5, 2006, and is held by the CSE Foundation. The Regions Bank account was opened on November 14, 2002, and was transferred to the CSE Ministry at an unspecified date.

[7] These five properties were initially conveyed to Kent or Jo Hovind or to an entity related to them as follows:

(1) The 29 Cummings Road property was conveyed on December 16, 1993, to Kent and Jo Hovind by Ernest and Voncile Hicks. On May 30, 2000, it was conveyed to Faith Baptist Fellowship. This property is the home of Kent and Jo Hovind.

(2) The 21 Cummings Road property was conveyed to Kent Hovind on October 29, 1999, by Donna and S.A. Roddenbery. On May 30, 2000, Hovind conveyed it to Elder Kent Hovind as trustee for Faith Baptist Fellowship.

(3) The 400 Cummings Road property was conveyed to Kent Hovind as the agent of CSE Enterprises on March 3, 2000, by E.Gordon Godfrey, Sr. and Janice Godfrey. On May 30,2000, CSE Enterprises and Kent Hovind conveyed the property to "Elder Kent Hovind" as trustee for Faith Baptist Fellowship.

(4) The 5720 North Palafox Highway property was conveyed to Kent and Jo Hovind on May 31, 2001, by Darlene Porter.

(5) The 5800 North Old Palafox Street property was conveyed on September 27, 2001, to Kent Hovind

CSE Foundation. These included properties located at 100 Cummings Road, 116 Cummings Road, 12 Oleander Drive, and 120 Oleander Drive ("the CSE Foundation properties).[8] The remaining real property, 23 Cummings Road, was not part of Stoll's plan for CSE and had been conveyed to Eric Hovind personally on August 10, 2000. Eric Hovind continues to hold title to it as his home.[9]

By the time they began transferring the five individual trust properties and the CSE Foundation properties to Stoll's trusts , the Hovinds had already engaged in serious criminal conduct. On July 11, 2006, Kent Hovind was indicted on twelve counts of withholding

---

by Dolores Choron.

    At some point after these conveyances, Stoll created individual trusts for each of these five properties under the name of the individual property's address. These include:

        (1) the 29 Cummings Road Trust;
        (2) the 21 Cummings Road Trust;
        (3) the 400 Block Cummings Subdivision Trust;
        (4) the 5720 N. Palafox Trust; and
        (5) the 5800 N. Palafox Trust.

    The record does not indicate when or where these trusts were created. On August 18, 2004, all five properties were transferred to their respective trusts. The Director of Ecclesiastical Enterprises served as trustee for each of the five trusts.

    [8]The conveyance deeds indicate the following transactions:

    (1) The 116 Cummings Road property was conveyed on November 14, 2003, by Margaret Riego to CSE Foundation, with the Firm Foundation as trustee.

    (2) The 12 Oleander Drive property was conveyed by Frank and Mary Willis on May 5, 2004, to Creation Science Evangelism, with the Firm Foundation as trustee.

    (3) The 100 Cummings Road property was conveyed on June 10, 2004, by Barry Weaver, Jr. to the CSE Foundation, with the Firm Foundation as trustee.

    (4) The 120 Oleander Drive property was conveyed on August 15, 2005, by the estate of Phillip Cotita to the CSE Foundation, with the Firm Foundation as trustee.

    [9]The property was originally conveyed with an incorrect name on July 28, 2000, by "CSE Enterprises Trus [sic], Kent Hovind, agent." The August 10, 2000, deed corrected the July 28 deed by conveying the property to Eric Hovind from "Kent Hovind as Trustee for Faith Baptist Fellowship."

Case No.: 3:06cr83/MCR

payroll taxes in violation of 26 U.S.C. § 7202 and one count of obstructing the administration of the internal revenue laws in violation of 26 U.S.C. § 7212(a). Kent and Jo Hovind were also indicted on forty-four counts of structuring transactions in violation of 31 U.S.C. §§ 5324(a)(3) and 5324(d), 31 C.F.R. § 103.11, and 18 U.S.C. § 2. The indictment sought the forfeiture of all the Hovinds' real and personal property traceable to the structuring offenses or the forfeiture of substituted property. On November 2, 2006, a jury found the Hovinds guilty on all counts in the indictment and reached a forfeiture verdict in the amount of $430,400.[10] This court entered an Amended Preliminary Order of Forfeiture for the Hovinds on January 8, 2007, and entered a Final Order of Forfeiture for Kent Hovind on January 19, 2007. A similar order was issued as to Jo Hovind on June 28, 2007. The Eleventh Circuit affirmed the Hovinds' convictions and the forfeiture of substitute property on December 30, 2008. *See United States v. Hovind*, 305 Fed. Appx. 615 (11th Cir. 2008).

As stated above, Glen Stoll and Eric Hovind filed separate objections to the forfeiture of substitute property and petitioned for a hearing pursuant to 21 U.S.C. § 853(n)(2). Eric Hovind's claim is limited to his home at 23 Cummings Road. Glenn Stoll objects to the forfeiture of the Wachovia Bank account and all real properties except 23 Cummings Road. Neither claimant objects to the forfeiture of the Regions Bank account. Stoll appears in this matter in two corporate trustee capacities:[11]

---

[10] The court sentenced Kent Hovind to 120 months' imprisonment and ordered him to pay restitution in the amount of $604,874.87. Jo Hovind was sentenced on June 29, 2007, to a term of twelve months and one day of imprisonment.

[11] For the sake of clarity, the court refers to Stoll in this case by his personal name rather than by his two corporate names. Stoll creates confusion by attempting to appear in a third capacity as "Director of Creation Science Evangelism Foundation" in relation to all of the CSE Foundation properties except 116 Cummings Road. The record contains no evidence of a nonprofit entity known as "Director of Creation Science Evangelism Foundation." Undisputed evidence shows that all four of the CSE Foundation properties (116 Cummings Road, 100 Cummings Road, 120 Oleander Drive, and 12 Oleander Drive) were transferred to the ministerial trust, CSE Foundation. The corporation sole, the Firm Foundation, is trustee for the CSE Foundation. Inexplicably, Stoll appears in this matter as the Firm Foundation only in relation to 116 Cummings Road. The court treats Stoll in relation to the CSE Foundation properties as the evidence supports – as the corporation sole, the Firm Foundation, trustee of the ministerial trust, the CSE Foundation.

1. Director of Ecclesiastical Enterprises, the corporation sole acting as trustee for the five individual trust properties:

   a. the 5800 N. Palafox Trust,
   b. the 5720 N. Palafox Trust,
   c. the 400 Block Cummings Subdivision Trust,
   d. the 29 Cummings Road Trust,
   e. the 21 Cummings Road Trust; and

2. Director of the Firm Foundation, the corporation sole acting as trustee for the ministerial trust, CSE Foundation, which holds nominal title to:

   a. the 116 Cummings Road property;
   b. the 100 Cummings Road property,
   c. the 120 Oleander Drive property,
   d. the 12 Oleander Drive property; and
   e. the Wachovia Bank account.

**Standard of Review**

Third party proceedings ancillary to a criminal forfeiture prosecution are governed by 21 U.S.C. § 853(n) and are civil in nature. *See United States v. Gilbert*, 244 F.3d 888, 907 (11th Cir. 2001). Under Fed.R.Crim.P. 32.2(c)(1)(B), a party in a § 853 ancillary proceeding can move for summary judgment pursuant to Fed.R.Civ.P. 56 prior to the hearing on the third-party's claim. A motion for summary judgment should be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A factual dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it could affect the outcome of a suit under the governing law. *Id.* The court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Miranda v. B & B Cash*

*Grocery Store, Inc.*, 975 F.2d 1518, 1534 (11th Cir. 1992).

The moving party has the initial burden of showing the absence of a genuine issue as to any material fact. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). Once the movant satisfies its burden of showing the absence of a genuine issue of material fact, the burden shifts to the nonmovant to produce "specific facts showing there is a genuine issue for trial." *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (emphasis omitted). A general denial unaccompanied by any evidentiary support is not sufficient. Fed.R.Civ.P. 56(e)(2). Instead, the nonmoving party must "demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604,608 (11th Cir. 1991).

### **DISCUSSION**

Unlike civil forfeiture, which is an *in rem* action against seized property, criminal forfeiture is an *in personam* action designed to punish the parties who committed the criminal acts. *United States v. Fleet*, 498 F.3d 1225, 1231 (11th Cir. 2007). The Government's right to property subject to criminal forfeiture vests at the time the act giving rise to the forfeiture is committed. 21 U.S.C. § 853(c). When such property has diminished in value or cannot be located, a court must substitute "any other property of the defendant up to the value of any property" subject to forfeiture. 21 U.S.C. § 853(p)(2). Third parties may assert claims to forfeited properties under § 853(n); the process for determining third-party rights is substantially similar to a quiet title proceeding. *Gilbert*, 244 F.3d at 911. To prevail, a third-party claimant must show he or she (1) had a legal interest in the property and the interest either vested in the claimant instead of the defendant, or was superior to the defendant's interest, at the time of the underlying criminal offense or (2) was a bona fide purchaser for value of the property. 21 U.S.C. § 853(n)(6). A third-party claimant, however, must have more than bare legal title to the forfeited property. "[C]ourts look behind the formal title to determine whether the record title owner is a 'strawman' set up to conceal the

Case No.: 3:06cr83/MCR

financial affairs or illegal dealings of someone else." *United States v. A Single Family Residence and Real Property Located at 900 Rio Vista Blvd.*, 803 F.2d 625, 630 (11th Cir. 1986) (citation omitted). The Eleventh Circuit has made clear that a nominee title holder has no standing to contest a forfeiture because such a claimant cannot show a "case or controversy" as required by Article III of the Constitution. *See United States v. $38,000 in U.S. Currency*, 816 F.2d 1538, 1543 (11th Cir. 1987); *see also United States v. Timley*, 507 F.3d 1125, 1130 (8th Cir. 2007) ("If the claimant has no interest under state law, the inquiry ends, and the claim fails for lack of standing.").

<u>Glenn Stoll</u>

The Government argues Glen Stoll's interest in the forfeited substitute properties fails under § 853(n)(6) because he was a nominee title holder for the Hovinds.[12] According to the Government, the Hovinds controlled the bank accounts, the five individual trust properties, and the CSE Foundation properties after these assets were transferred to the trusts that held them. In response, Stoll restates the undisputed facts that the properties he lays claim to were held in trust for CSE, and Stoll had legal title to these properties in his capacity as the corporate trustee. State law determines Stoll's interest in the substitute properties. *See Fleet*, 498 F.3d at 1231. Although the Government has not provided guidance on this issue, Florida law presumes that the person whose name appears on a legal title is the property's owner. *Hagopian v. Zimmer*, 653 So.2d 474, 475 (Fla. 3d DCA 1995). This presumption is rebuttable. *Morales v. Coca-Cola Co.*, 813 So.2d 162, 166 n.2 (Fla. 4th DCA 2002). Courts in this circuit will look to who has dominion and control over Florida property in deciding true ownership. *See A Single Family Residence Located at 900*

---

[12]Nominee "connotes the delegation of authority to the nominee in a representative or nominal capacity only, and does not connote the transfer or assignment to the nominee of any property in, or ownership of, the rights of the person nominating him." *Braxton v. United States*, 858 F.2d 650, 653 n.6 (11th Cir. 1988) (internal marks omitted).

Case No.: 3:06cr83/MCR

*Rio Vista Blvd.*, 803 F.2d at 630. Florida caselaw is consistent.[13] *See*, *e.g.*, *Wilson Cypress Co. v. Logan*, 162 So. 489, 491 (Fla. 1935) (exercising dominion over property is inconsistent with true owner's rights); *Wilson v. Burke*, 53 So.2d 319, 320-21 (Fla. 1951) (holding that ownership of a car depends on dominion and control over it); *Broward County v. Eller Drive Ltd. Partnership*, 939 So.2d 130, 133 (Fla. 4th DCA 2006) (finding that dominion over a building constitutes ownership for tax purposes).

The record shows Stoll exercised virtually no control over the properties for which he was trustee, and the court agrees he acted as a nominal title holder for the Hovinds. Almost all activities associated with the properties Stoll held title to were performed by the Hovinds or their family members. For example, Stoll did not have signature authority over the Wachovia Bank account and could not direct its funds even though he was the account's legal title holder as trustee of the CSE Foundation. Instead, the Hovinds and their daughter-in-law Tanya Hovind controlled the account, whose mailing address is the Hovinds' home at 29 Cummings Road, and wrote the checks drawn from the account.[14] Nor did Stoll take any role in managing the real properties placed in the trusts. The Hovinds paid insurance on their home, not Stoll as trustee of the 29 Cummings Road Trust. At least five of the properties – including 100 Cummings Road, 116 Cummings Road, 21 Cummings Road, 12 Oleander Drive, and 120 Oleander Drive – had homes that were leased to "missionaries" who paid rent. The lease agreements show no involvement by Stoll. In fact, the distinctions between trusts, trust properties, and beneficiares seem to have been so thoroughly ignored in this case as to be meaningless. None of the taxes for any of the real properties were paid

---

[13]Although the court recognizes the Florida cases cited do not involve forfeitures, federal law does not look to state law to determine what property is forfeitable. State law determines the legal interest a defendant or third-party claimant has in property subject to forfeiture; federal law controls whether such an interest arising under state law is forfeitable. *See Fleet*, 498 F.3d at 1231.

[14]Although Stoll and Eric Hovind have not objected to the forfeiture of the Regions Bank account, the court notes Kent Hovind had signature authority over it even though the account was held by CSE Ministry, with Director of Ecclesiastical Enterprises as trustee.

Case No.: 3:06cr83/MCR

by the trusts that held them; the Hovinds' ministerial trust, the CSE Ministry, paid these taxes even though it only had title to the Regions Bank account. Likewise, the leases given to the Hovinds' missionaries bore no relation to the leased homes' true ownership. The record shows that Stoll had appointed Eric Hovind as agent for the five individual trust properties. Eric Hovind signed the property leases to the missionaries, but only one of the leased properties – 21 Cummings Road – was part of the five individual trust properties; the remaining leased homes were owned by the CSE Foundation, and nothing in the record suggests Eric Hovind was authorized to act on that trust's behalf. Moreover, none of the leases were executed by or on behalf of the trusts that held them. Instead, each lease purports to be issued by "CSE" and states that rent is payable to CSE, even though the Hovinds had already transferred all the properties out of CSE and into Stoll's trusts.

No evidence suggests Stoll played any role in managing the trusts' properties, nor has Stoll shown that his inaction was proper because the trusts' language somehow limited his power as trustee. A trustee has broad powers under The Florida Uniform Trustees' Power Act, including the right to maintain buildings, insure property, and enter lease agreements. *See* Fla. Stat. § 737.402. As shown above, the Hovinds assumed these powers at the expense of Stoll's role as trustee. Florida courts have warned that incursions into a trustee's powers under § 737.402 are inconsistent with the distinction between legal title, which a trustee holds, and the beneficiary's equitable title. *See Brevard County v. Ramsey*, 658 So.2d 1190, 1196 (Fla. 5th DCA 1995) (holding that a trustee's powers under § 737.402 are so broad that preventing a beneficiary from exercising them "is consistent with the concept that the trustee retains the legal title to the real estate held in trust."). In this case, the Hovinds' control over the trusts' properties was so complete that Stoll did not identify himself as trustee even on the rare occasion when he acted on the trusts' behalf. On April 13, 2006, for example, Stoll wrote a letter to the Escambia County Tax Collector claiming tax-free status for homes located at 400 Cummings Road, 5720 North Palafox Highway, and 5800 North Old Palafox Street. Instead of identifying them as trust properties

Case No.: 3:06cr83/MCR

and himself as trustee, Stoll purported to be the "Director of Ministries and Properties of Creation Science Evangelism." CSE and the Hovinds, of course, had no legal interest in these properties because they had already conveyed them to the trusts Stoll should have managed as trustee.

In his affidavit supporting the petition for hearing, Stoll states that his primary duty as trustee is "to see that proper management contracts are in place and that sufficient educational information is provided for the safe and lawful operation of the Church and its ministries under this organizational establishment." Affidavit of Glenn Stoll at ¶ 20. Stoll also claims he travelled to Pensacola, Florida to audit books and meet CSE employees. *Id.* at ¶ 22. Even considered in the light most favorable to Stoll, these facts do not show he had any control over the properties placed in trust; the only "management contracts" evidenced in the record are the property leases that show no involvement by Stoll and, in fact, on their face disregard the properties' true ownership. Nor does Stoll's affidavit contradict evidence showing the Hovinds exercised extensive control over the trusts. Florida law is clear that when a settlor exercises day-to-day control over a trust at the expense of a trustee's power, the trust is merely an agency agreement. *See Lane v. Palmer First Nat'l Bank and Trust*, 213 So.2d 301, 303-04 (Fla. 2d DCA 1968). Stoll has not shown he played anything more than a titular role in the trusts he created, and the court finds he was a nominee title holder for Kent and Jo Hovind. "A person cannot have a vested interest in property if he is found to be acting as a nominee for persons whose property is subject to the forfeiture." *United States v. Weiss*, 467 F.3d 1300, 1303 n.1 (11th Cir. 2006). As such, Stoll has no legal interest in any forfeited substitute property and lacks standing to challenge the court's June 28, 2007, and October 8, 2008, forfeiture orders.[15]

<u>Eric Hovind</u>

---

[15]Having found Stoll is without standing, the court does not reach the Government's arguments under § 853(n)(6) that (1) Stoll was not a bona fide purchaser for value of the real properties or (2) his interest in the properties did not vest prior to the Hovinds' criminal acts.

Case No.: 3:06cr83/MCR

The Government does not distinguish between Glenn Stoll and Eric Hovind in its motion; however, the court assumes the Government also takes the position that Eric Hovind cannot meet the requirements of § 853(n)(6) because he was a nominee holder of 23 Cummings Road and, in the alternative, did not have title to the property when Kent and Jo Hovind committed their crimes. In his affidavit supporting his petition for hearing, Eric Hovind contends that he holds title to the property himself and has exercised dominion and control over it consistent with his ownership rights. Affidavit of Eric Hovind at ¶¶ 3-4. The Government does not dispute this testimony. Unlike the other nine real properties subject to forfeiture, 23 Cummings Road is not held in a trust created by Stoll. Eric Hovind obtained title to it after a partition and a series of conveyances that were not connected to CSE's restructuring. On October 29, 1999, Donna and S.A. Roddenbery conveyed 21 Cummings Road to Kent Hovind, who subsequently conveyed it to "Elder Kent Hovind" as trustee for Faith Baptist Fellowship on May 20, 2000. The property was then split into what is now 21 Cummings Road and 23 Cummings Road, and the latter parcel of land was conveyed to Eric Hovind on August 10, 2000. Eric Hovind alleges he took active control over the lot by personally building a home on it with $70,000 he borrowed from CSE and that he has repaid $50,856.69 in principal on the loan. The Government admits he pays all property taxes on 23 Cummings Road. In the absence of any contrary evidence from the Government, the court finds Eric Hovind's financial investment in, and improvement of, 23 Cummings Road are inconsistent with actions he would have taken if he were a nominal title holder for Kent and Jo Hovind.

As an additional matter, the Government has not shown that Eric Hovind's legal interest in 23 Cummings Road had not vested at the time the crimes charged in the indictment were committed. Section 853(n)(6)(A), which applies to substitute and non-substitute property, provides that forfeiture does not apply to a third-party claimant whose title was vested in him rather than in the defendants at the time the defendants committed the acts giving rise to the forfeiture. 21 U.S.C. § 853(n)(6)(A); *see also United States v.*

*Watkins*, 320 F.3d 1279 (11th Cir. 2003) (applying § 853(n)(6) to substitute property). According to the Hovinds' indictment, the earliest criminal act occurred during the fiscal quarter ending March 31, 2001. Eric Hovind's interest in 23 Cummings Road was conveyed to him on August 10, 2000. On its face, the conveyance of 23 Cummings Road appears to be a gift because the deed states Eric Hovind gave "one ounce of silver" in consideration for it. Florida law is clear that real property can be transferred as a gift without consideration. *See Chase Fed. Sav. and Loan Ass'n v. Schreiber*, 479 So.2d 90, 100-01 (Fla. 1985). To be complete, an inter vivos gift requires a donor to deliver the gift property to the donee and relinquish control over it. *See Ritter v. Shamas*, 452 So.2d 1057, 1059 (Fla. 3d DCA 1984). Eric Hovind had sufficient possession of the 23 Cummings Road to build a home on it, and no evidence suggests Kent or Jo Hovind retained any control over the property. The Government does not allege the gift was incomplete or that the August 10, 2000, conveyance was fraudulent or otherwise invalid. Consequently, the Government has not carried its burden of proof under Fed.R.Civ.P. 56 to show that Eric Hovind does not meet the title requirement of § 853(n)(6)(A) and that 23 Cummings Road should be forfeited.[16]

### **CONCLUSION**

Third-party claimant Glenn Stoll is a nominee title holder of the substitute forfeiture properties held in trusts for which he acts as trustee, and the Government's Motion for Summary Judgment is GRANTED as it relates to Stoll. The Government's motion is DENIED in relation to third-party claimant Eric Hovind. Pursuant to the court's June 28, 2007,Order Forfeiting Substitute Property and the second October 8, 2008, Order Forfeiting

---

[16]The Government asks the court to apply the relation back doctrine under § 853(c) to both Stoll and Eric Hovind. Section 853(c), which covers forfeited property traceable to proceeds of the crime, provides that the Government's interest in such property vests at the time the crime is committed. 21 U.S.C. § 853(c). Although some courts have applied this doctrine to forfeited substitute property, *see, e.g.*, *United States v. McHan*, 345 F.3d 262, 271 (4th Cir. 2003), the Eleventh Circuit has not. The court does not address the relation back doctrine here because it is inapplicable to Stoll, who lacks standing, and to Eric Hovind, whose interest in 23 Cummings Road arose prior to the Government's.

Case No.: 3:06cr83/MCR

Substitute Property, the following properties are subject to forfeiture by the Government to satisfy the money forfeiture judgment:

1. Wachovia Bank account number 2000-2577-8577;
2. Regions Bank account number 5107101872;
3. The 5800 N. Palafox Trust;
4. The 5720 N. Palafox Trust;
5. The 29 Cummings Road Trust;
6. The 400 Block Cummings Subdivision Trust;
7. The 21 Cummings Road Trust;
8. The 116 Cummings Road property;
9. The 100 Cummings Road property;
10. The 120 Oleander Drive property; and,
11. The 12 Oleander Drive property.

The record, however, indicates that the combined value of these eleven substitute properties exceeds the $430,400 forfeiture amount. Section 853(p) limits the forfeiture of substitute property by providing that "the court shall order the forfeiture of any other property of the defendant up to the value of the property" otherwise subject to forfeiture under the statute. 21 U.S.C. § 853(p). The court therefore further ORDERS the Government to dispose of these forfeited properties in a piecemeal fashion and only as required to satisfy the forfeiture amount of $430,400. Any unsold properties not needed to meet the forfeiture judgment, and any cash proceeds from sold properties not required for the payment of $430,400, shall be promptly remitted to Kent and Jo Hovind by the Government. The Government shall notify the court in a timely manner of the properties it has sold and inform the court of those properties and any cash it has returned to the Hovinds. Such action ensures compliance with the provisions of § 853(p) and avoids the imposition of any additional penalty on the Hovinds. *See United States v. Alamoudi*, 452 F.3d 310, 315 n.3 (4th Cir. 2006). Accordingly, it is ORDERED:

Case No.: 3:06cr83/MCR

1. The United States of America's Motion for Summary Judgment (doc. 286) is GRANTED IN PART and DENIED IN PART; and,
2. Third-party claimant Glenn Stoll's Objection to Notice of Forfeiture and Petition for Hearing (doc. 230) is DISMISSED for lack of standing.

**DONE AND ORDERED** on this 29th day of July, 2009.

s/ *M. Casey Rodgers*
**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**